IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BRADFORD F. MARTIN and CARMEN P. MARTIN, husband and wife,
*Plaintiffs/Appellants*,

*v.*

VICTOR K. STAHELI M.D., and "JANE DOE" STAHELI, husband and
wife, et al., *Defendants/Appellees*.

No. 1 CA-CV 19-0074
FILED 12-19-2019

Appeal from the Superior Court in Navajo County
No. S0900CV201600214
The Honorable Dale P. Nielson, Judge

**REVERSED AND REMANDED**

COUNSEL

McNamara Goldsmith, P.C., Tucson
By Michael F. McNamara
*Counsel for Plaintiffs/Appellants*

Jones, Skelton & Hochili PLC, Phoenix
By Eileen Dennis GilBride (argued)
*Co-Counsel for Defendants/Appellees Terrence Cavanaugh and White Mountain
Radiology PLLC*

Kent & Wittekind PC, Phoenix
By Richard A. Kent and Callie P Maxwell
*Co-Counsel for Defendants/Appellees Terrence Cavanaugh and White Mountain Radiology PLLC*

Broening Oberg Woods & Wilson, Phoenix
By James R. Broening, Megan E. Gailey, and Alice M. Jones
*Counsel for Defendant/Appellee Summit Healthcare Regional Medical Center*

Renaud Cook Drury Mesaros, PA, Phoenix
By William W. Drury, Jr. and Jeffrey S. Hunter
*Counsel for Defendants/Appellees Victor K. Staheli, M.D., Curtis Jones, and White Mountain Emergency Physicians PC*

Wood, Smith, Henning & Berman, LLP, Phoenix
By Jodi L. Mullis and Christopher K. Heo
*Counsel for Defendants/Appellees Aureus Radiology, LLC, and Jennifer Walcoff*

Slutes, Sakrison & Rogers, PC, Tucson
By Kathleen M. Rogers
*Counsel for Defendants/Appellees Banner University Medical Center, Tucson Campus, LLC, Arizona Board of Regents (ABOR) dba The University of Arizona College of Medicine, and University Medical Center Corporation*

---

**Opinion**

Judge Paul J. McMurdie delivered the opinion of the Court, in which Presiding Judge Samuel A. Thumma and Judge Jennifer M. Perkins joined.

---

**M c M U R D I E**, Judge:

¶1          Carmen Martin, individually and as the executor of her late husband Bradford Martin's estate, appeals the superior court's dismissal of the complaint alleging medical negligence against several medical professionals and their respective employers. We reverse the judgment in favor of the defendants and hold: (1) an injured party's death extinguishes his or her claim for hedonic damages, but it does not extinguish the familial consortium claims of the surviving family members; (2) the alleged medical malpractice victim's estate may maintain a claim for economic damages after the victim's death; (3) prejudice must be present before a court may deny substitution of a decedent's estate; and (4) the statute of limitations

2

does not begin to run on a minor child's loss-of-consortium claim until the child reaches majority.

## FACTS AND PROCEDURAL BACKGROUND

¶2            In August 2014, Bradford Martin went to the emergency department at Summit Healthcare Regional Medical Center after a fall. Dr. Victor Staheli, radiologist Dr. Terrance Cavanaugh, and physician assistant Curtis Jones treated Martin. After Dr. Cavanaugh interpreted the x-rays, the medical providers determined Martin was "stable" and discharged him. Three days later, Martin claimed he felt his back "drop" or "break" when attempting to sit. He again went to Summit Healthcare, where it was confirmed that Martin had suffered "a profound fracture at T12-L1."

¶3            In May 2016, Martin and his wife Carmen filed this case, alleging medical negligence against Dr. Staheli, Dr. Cavanaugh, Jones, and Summit Healthcare Regional Medical Center. The Martins later added White Mountain Emergency Physicians, P.C., as Dr. Staheli's and Jones' employer, and White Mountain Radiology, PLLC, as Dr. Cavanaugh's. Additional defendants Jennifer Walcoff and her employer, Aureus Radiology, LLC, and Banner University Medical Center were later added as defendants. We refer to all the defendants collectively as the "Medical Providers."

¶4            The Martins alleged that Dr. Cavanaugh's incorrect interpretation of the x-ray, and Dr. Staheli's and Jones' failure to properly examine and treat Martin, led him to being improperly discharged without further imaging that would have confirmed the presence of the spinal fractures and instability that put him at risk for the serious spinal cord injury that he later suffered. The Martins alleged that they both suffered mental pain and suffering, including a loss of consortium, and suffered and would continue to suffer economic damages, including medical expenses, loss of income, and ongoing nursing home care as a result of the injuries to Martin.

¶5            On April 4, 2018, Martin passed away suddenly after being diagnosed with cancer the week before. His death was unrelated to the alleged medical negligence. On April 6, 2018, Martin's widow filed a notice of his death. The Medical Providers then moved to dismiss the entire complaint.

¶6            The motion to dismiss focused on the consortium claims. The Medical Providers claimed that because Martin's death was unrelated to the alleged medical malpractice, "there [was] no legal basis for a wrongful

death claim," and that "[Martin's] claim against these Defendants is invalid as a matter of law because he has passed away for reasons unrelated to medical negligence," therefore, "any claims derivative of the medical malpractice claim—including loss of consortium—do not survive [Martin's] death." The motion did not provide a basis for dismissing the claims for economic damages, including medical expenses, loss of income, and Martin's inability to live at home as a result of the injuries. Nevertheless, the motion concluded: "Plaintiffs' loss of consortium claim did not survive [Martin's] death. As such, Plaintiffs' [Complaint] must be dismissed."

¶7            Martin's widow responded to the motion to dismiss and moved to amend the complaint to add Martin's estate and Martin's children's claims for loss of consortium. Her response noted that "[Martin's] claim in this case continues to be pursued on behalf of his estate pursuant to [Arizona Revised Statutes ("A.R.S.") section 14-3110 ("Survival Statute")]," and argued that a family member's loss-of-consortium claim is not extinguished upon the death of the injured party.

¶8            Rather than addressing the claims for economic damages, the Medical Providers' reply argued only about the consortium claims. They asserted that the legislature must create a cause of action before the family could recover premortem loss-of-consortium damages after the injured party's death, as it had when it enacted A.R.S. §§ 12-611 through -613 (the "Wrongful Death Statutes"). The Medical Providers concluded: "because there is no remaining viable loss of consortium claim for Mrs. Martin, this *case* must be dismissed with prejudice." (Emphasis added.) They also opposed the motion to amend to add Martin's minor children, stating that: (1) the amendment would be futile because Martin's children's claims for loss of consortium fail for the same reasons as his widow's; (2) the statute of limitations had expired on the children's claims; and (3) the undue delay would prejudice the Medical Providers. The Medical Providers did not address the request to substitute Martin's estate.

¶9            The court held oral argument on the various motions, and, after taking the matter under advisement, dismissed the complaint in its entirety. The court noted that a loss-of-consortium claim is derivative of the injured party's claim. The court then held that under the Survival Statute, the claims for loss of consortium were extinguished upon Martin's death. Martin's widow moved for clarification about the status of the motion to amend and whether the court had intended to dismiss the claims for economic damages. The court denied the motion, stating that the claims "were derivative and since [Martin] was deceased the claims could not

4

survive his death" and because the motion to amend "was primarily based on the [same] issues," it had implicitly denied that motion as well.

¶10 Martin's widow moved for a new trial, restating that she and Martin's estate had viable claims for economic damages and maintaining that the court improperly dismissed her consortium claim. The Medical Providers' response ignored the economic damages argument in its entirety, stating: "Plaintiffs' claims of loss of consortium were extinguished by the death of Mr. Martin from cancer. The facts and the law will not change no matter how many times they are recited and Plaintiffs will not be entitled to relief in this case no matter how many times they ask for it." The superior court denied the motion for a new trial and entered final judgments with awards of costs to the Medical Providers.

¶11 Martin's widow appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶12 Although the parties frame the issues differently, they can be summed up as: (1) whether a family member's claim for loss of consortium arising out of an alleged tortious act that injured another family member is extinguished upon the death of the injured family member if the death is unrelated to the alleged wrongful act; (2) whether the superior court erred by denying Martin's widow's motion to substitute Martin's estate as a plaintiff if Martin's economic claims remained after his death; and (3) whether the court abused its discretion by denying the motion to add Martin's children's claims for loss of consortium after the two-year statute of limitations period expired for Martin to bring an action for medical negligence.

¶13 "This court will affirm a dismissal for failure to state a claim only if the allegations of the complaint do not state a cause of action recognized by law." *Owens v. City of Phoenix*, 180 Ariz. 402, 405–06 (App. 1994). In reviewing a judgment based on the pleadings, we accept as true the factual allegations of the complaint. *Save Our Valley Ass'n v. Ariz. Corp. Comm'n*, 216 Ariz. 216, 218, ¶ 6 (App. 2007). We review *de novo* whether a complaint states a claim for relief, *Levine v. Haralson, Miller, Pitt, Feldman & McAnally, P.L.C.*, 244 Ariz. 234, 237, ¶ 7 (App. 2018); the application of a statute of limitations, *Logerquist v. Danforth*, 188 Ariz. 16, 18 (App. 1996); and the superior court's interpretation of a statute, *Watts v. Medicis Pharm. Corp.*, 239 Ariz. 19, 23, ¶ 9 (2016), but we review the superior court's denial of a motion to amend a complaint for an abuse of discretion, *Carranza v.*

*Madrigal*, 237 Ariz. 512, 515, ¶ 13 (2015). The superior court abuses its discretion when it misapplies the law or predicates its decision on incorrect legal principles. *Hammett v. Hammett*, 1 CA-CV 18-0632 FC, 2019 WL 5556953, at *3, ¶ 13 (App. Oct. 29, 2019).

## A. The Death of an Injured Family Member Does Not Extinguish the Loss-of-Consortium Claim of a Surviving Family Member.

¶14        The common-law rule in Arizona is that a personal cause of action in tort held by an injured party does not survive in favor of the personal representative after the injured party dies. *McClure v. Johnson*, 50 Ariz. 76, 81 (1937) ("It is admitted that under that law a cause of action for personal injuries or death based upon a tort did not survive the death of either the wrongdoer or that of the person killed or injured."); *Harrison v. Loyal Protective Life Ins. Co.*, 396 N.E.2d 987, 990 (Mass. 1979) ("The original reasons for the nonsurvival of torts at common law have been largely obscured in antiquity."). This restriction on the survival of causes of action was expressed in the maxim *actio personalis moritur cum persona* (a personal right of action dies with the person).

¶15        Under Arizona's Survival Statute, however, specific causes of action may be commenced or maintained by the decedent's estate or the personal representative after an individual's death. The Survival Statute provides:

> Every cause of action, except a cause of action for damages for breach of promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium or invasion of the right of privacy, shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the personal representative of such person, provided that upon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed.

A.R.S. § 14-3110. Generally, a cause of action for economic harm can be pursued post-mortem. *See, e.g.*, *Barragan v. Superior Court*, 12 Ariz. App. 402, 404 (1970) ("In general, a survival statute provides for recovery of damages sustained by the deceased party from the time of accident until his death. Such damages include expenses incurred, necessitated by the injuries, in the nature of hospital and medical expenses."). The parties agree that the Survival Statute does not apply to Martin's widow or children because they allege claims based on their damages. They also agree that Martin's non-economic claims are no longer viable due to his death. However, the

parties disagree about whether the familial loss-of-consortium claims survived Martin's death.

### 1.    A Claimant Alleging Loss of Consortium Must Establish the Underlying Tortious Action that Caused the Injury that Resulted in the Loss of Consortium.

¶16    An individual may make a claim for loss of consortium against a tortfeasor whose conduct caused the claimant to lose "society, companionship, care, support, and affection" within a marital or parent-child relationship. *See, e.g.*, *Howard Frank, M.D., P.C. v. Superior Court*, 150 Ariz. 228, 230 (1986) ("It is apparent . . . that the award of consortium damages is a well-established remedy in Arizona for negligent injury to family relations."). "The origin of the consortium action at common law was the right of the master to recovery for tortious injury to his servants, since in such a case the master would suffer a loss of services in addition to whatever loss the servant himself suffered." *Id.* at 231. This right has been extended to husbands, *id.*, wives, *City of Glendale v. Bradshaw*, 108 Ariz. 582, 584 (1972), parents, *Reben v. Ely*, 146 Ariz. 309, 312 (App. 1985), and children, *Villareal v. State, Dep't of Transp.*, 160 Ariz. 474, 477 (1989). Today, an injured party's family member may bring a separate claim for loss of consortium. *See Lohmeier v. Hammer*, 214 Ariz. 57, 62, ¶ 16 (App. 2006).

¶17    Loss of consortium is a derivative claim, which means that the success of a loss-of-consortium claim is dependent on the success of another claim. *See Barnes v. Outlaw*, 192 Ariz. 283, 285–86, ¶ 8 (1998) (derivative claim for loss of consortium necessarily requires proof of each of the elements of the underlying cause of action). Here, the dispute is whether the consortium claimant can maintain his or her claim for loss of consortium when the decedent cannot claim non-economic damages. Martin's widow's position is that her and the children's loss of consortium stems from the Medical Providers' alleged negligence; therefore, they can recover if they establish that the Medical Providers were negligent towards Martin, and the negligence caused a loss of consortium with Martin from that time until his death.

¶18　　　　The Medical Providers' position is that a loss-of-consortium claim is a byproduct of Martin's pain and suffering[1] and because Martin's death extinguished his non-economic claims, the derivative familial consortium claims are likewise prohibited. The Medical Providers cite to the following cases and state that "if the law were as [Martin's widow] suggest[s], and 'derivative' meant only that a consortium claimant needs to prove the elements of negligence towards the decedent, then the consortium claims would have survived" in these cases. The Medical Providers' reliance on the cited cases is misplaced.

¶19　　　　In *Quadrone v. Pasco Petroleum Co., Inc.*, 156 Ariz. 415, 417 (App. 1987), the court held that a party's recovery for loss of consortium must be proportionally reduced by the percentage of fault attributed to the injured party. And as an extension of that principle, in *Villareal*, 160 Ariz. at 481, the Arizona Supreme Court held that any defense that applies to the injured party's substantive claim is enforceable against the party seeking loss of consortium.

> Both the child's claim and the parent's claim are based on the same conduct of the defendant. A child's claim for loss of consortium is derivative of the parent's claim for personal injuries. Defenses good against the parent will be good against the child, and any percentage of negligence attributable against the parent under Arizona's comparative

---

[1]　　　　At oral argument the Medical Providers maintained that familial loss of consortium is derivative of "hedonic damages," which are damages that compensate the injured party for the limitations "to participate in and derive pleasure from the normal activities of daily life, or for the individual's inability to pursue his [or her] talents, recreational interests, hobbies, or avocations." *Ogden v. J.M. Steel Erecting, Inc.*, 201 Ariz. 32, 39, ¶ 31 (2001) (quoting *Boan v. Blackwell*, 541 S.E.2d 242, 244–45 (S.C. 2001)). Hedonic damages "compensate the individual not only for the subjective knowledge that one can no longer enjoy all of life's pursuits, but also for the objective loss of the ability to engage in these activities." *Id.* In their answering brief, the Medical Providers argued that the loss of consortium is derivative of Martin's pain and suffering. As relevant here, there is no distinction between the two positions because they are both non-economic general damages, *Quintero v. Rogers*, 221 Ariz. 536, 539–40, ¶¶ 6–10 (App. 2009), and all parties agree Martin's claim for non-economic damages did not survive his death.

negligence statute will reduce the amount of the child's recovery.

*Id.* Neither case addresses nor supports the Medical Providers' theory that Martin's death prohibits loss-of-consortium claims by his surviving family for their loss before his death.

**¶20** Likewise, in *Mardian Construction Co. v. Superior Court*, an injured employee's wife brought a loss-of-consortium claim against her husband's employer. 157 Ariz. 103, 104 (App. 1988). We held that her husband's election to give up the right to sue by not rejecting the provisions of Arizona's Workers' Compensation Law, A.R.S. § 23-906, was binding on her. *Id.* at 106. Because Arizona's Workers' Compensation statutes created an exclusive remedy for covered employees, the court concluded the statutes evidenced "a clear legislative intent to bar any common law right-of-action [against the employer] which might possibly flow from a work-related injury," including the wife's loss-of-consortium claim. *Id.*

**¶21** Finally, our case is distinguishable from *Stengel v. Medtronic, Inc.*, 306 F.R.D. 230, 232–33 (D. Ariz. 2015), where the court dismissed an ex-wife's loss-of-consortium claim after the injured party died and his ex-wife, as his personal representative, failed to substitute in the action to pursue his claims. As a result, the court dismissed the underlying negligence claim with prejudice. *Id.* at 233. The court then concluded that the ex-wife's derivative claim, which was based on the now-dismissed claim, "also fail[ed]." *Id.* Here, Martin's widow timely moved to substitute the estate to pursue Martin's medical negligence action. Therefore, we decline to opine on the propriety of the district court's order.

**¶22** The Medical Providers also cite out-of-state cases, but "because survival statutes and the interpretation of them vary greatly from state to state, we do not find a survey of the law in other jurisdictions particularly enlightening in interpreting [A.R.S.] § 14-3110." *Quintero v. Rogers*, 221 Ariz. 536, 539, ¶ 5 (App. 2009).

**¶23** Perhaps most notably absent from the Medical Providers' argument, and the cases they cite, is why an individual could maintain an action for a prior harm inflicted on the familial relationship, but no longer maintain that same action—for the same harm, to the same relationship, for the same time period—upon the injured party's death. *Cf. Haralson v. Fisher Surveying, Inc.*, 201 Ariz. 1, 5, ¶ 16 (2001) ("There is no logical reason why courts should allow a punitive award against a defendant who survives a judgment, but deny it where death occurs earlier."); *Villareal*, 160 Ariz. at

479 ("It would be inconsistent to allow recovery for loss of consortium resulting from death but to deny recovery when the loss results from severe injury.").

¶24 The Medical Providers argued to the superior court—now abandoned on appeal—that the Wrongful Death Statutes are evidence that the legislature did not intend to preserve a family member's premortem claim for consortium loss because the Wrongful Death Statutes expressly provide for post-mortem consortium loss. The Wrongful Death Statutes are unrelated to the issue; that recovery for post-mortem consortium loss is available within a wrongful-death action does not mean that a claim for premortem consortium loss by a family member is barred in another action. *Barragan*, 12 Ariz. App. at 405 ("We hold, therefore, that a claim under the survival statute and a claim under the wrongful death statute are separate and distinct notwithstanding they originate from the same wrongful act. . . . The latter begins where the former ends and recovery on both is not a double recovery for a single wrong but rather separate recoveries for different wrongs.").

¶25 Accordingly, the court erred by dismissing Martin's widow's loss-of-consortium claim.

> ###### 2. This Decision is Not a Change in the Law and Applying a Prospective Application Would Only Serve to Exempt the Medical Providers from Liability Under the Existing Law.

¶26 The Medical Providers urge that if we hold that a surviving family member's loss-of-consortium claim is not affected by the death of the injured party, we should only apply it prospectively.

> Unless otherwise specified, Arizona appellate opinions in civil cases operate both retroactively and prospectively. To determine whether an opinion should apply only prospectively, we balance three factors: (1) whether we establish a new legal principle by overruling clear and reliable precedent or by deciding an issue whose resolution was not foreshadowed, (2) whether retroactive application would adversely affect the purpose behind the new rule, and (3) whether retroactive application would produce substantially inequitable results.

*Cundiff v. State Farm Mut. Auto. Ins. Co.*, 217 Ariz. 358, 362, ¶ 18 (2008) (quotations, alterations, and citations omitted).

¶27 The legal principle supporting our conclusion has its roots in the common law, is consistent with our existing precedent, and is not a departure from our current law. This decision does not expand recovery for loss of consortium beyond what our supreme court has already prescribed. *See Bradshaw*, 108 Ariz. at 584 (loss of consortium with a spouse); *Villareal*, 160 Ariz. at 477 (loss of consortium with a parent). Applying *Cundiff*, the analysis in this opinion does not apply only prospectively. Martin's death indeed extinguished his non-economic claims. But the alleged tortfeasors may not request that this court grant them an additional windfall by denying Martin's family members the opportunity to establish liability for the alleged injury the familial relationships suffered from the time of the alleged injury until his death.

## B. The Superior Court Erred by Denying the Motion to Amend the Complaint.

¶28 The court also erred by denying the motion to substitute Martin's estate as the plaintiff and add Martin's children's claims for loss of consortium.

### 1. The Superior Court Erred by Denying the Substitution of the Plaintiff's Estate Without the Medical Providers Showing Prejudice.

¶29 If a party dies after the commencement of an action, presumptively, the superior court will order substitution of the proper party. Ariz. R. Civ. P. 25(a)(1). The appropriate party to maintain an action after a party's death is "an executor, administrator, or guardian." Ariz. R. Civ. P. 17(b). Although a timely motion to substitute will ordinarily be granted, the court may deny the motion if it finds "'undue' delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments or undue prejudice to the opposing party," *Owen v. Superior Court of State of Ariz., In & For Maricopa County*, 133 Ariz. 75, 79 (1982), or if circumstances have arisen rendering it unfair to allow the substitution, *Heredia v. Indus. Comm'n*, 190 Ariz. 476, 478, n.1 (1997). *See* Ariz. R. Civ. P. 25(a), State Bar Comm. Note 1963 Amend.; *see also* Ariz. R. Civ. P. 25(a)(1) (motion to substitute is timely within 90 days after service of notice of death).

¶30 Martin's widow timely moved to substitute Martin's estate, and the Medical Providers did not object. On appeal, the Medical Providers argue that the court did not abuse its discretion by refusing to substitute

Martin's estate and, instead, dismissing the complaint with prejudice. The Medical Providers argue:

> Having failed to argue the "economic damages" point in their motion to amend, or to explain why the estate should be added as a plaintiff, and having waited until the motion for reconsideration to raise the point, Plaintiffs waived the issue and deprived Defendants of an opportunity to respond.

Martin's widow characterizes this argument as "disingenuous." We agree the argument lacks merit.

¶31 The issue of whether the complaint was improperly dismissed is not "waived." Nor was Martin's widow required to "argue the 'economic damages' point" in the motion to amend. The "economic damages point" was in the proposed complaint attached to the motion to amend—as it had been in the previous three amended complaints. *See Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 6 (2008) ("Arizona follows a notice pleading standard, the purpose of which is to 'give the opponent fair notice of the nature and basis of the claim and indicate generally the type of litigation involved.'" (quoting *Mackey v. Spangler*, 81 Ariz. 113, 115 (1956))). Further, it is unclear what type of explanation the Medical Providers claim they needed to understand the reason for the substitution. Martin had died; that was the basis for the substitution.

¶32 The Medical Providers ask this court to affirm the dismissal with prejudice of an adequately pled complaint. The Medical Providers, however, have not provided a legal basis for their motion to dismiss the medical negligence claim that caused Martin's widow, as part of the marital community, to suffer economic damages. The complaint stated, "[the] Plaintiffs, *and each of them*, have suffered and will continue to suffer economic damages, including medical expenses, loss of income, and, in particular, an economic inability to live at home, all as a result of said injuries to Mr. Martin." (Emphasis added.) Nothing more was required.

¶33 The only statement in the Medical Providers' motion to dismiss that could be interpreted to apply to the economic claims was their assertion that Martin's "claim against [the Medical Providers] is invalid as a matter of law because he has passed away for reasons unrelated to medical negligence." Although they have abandoned that assertion on appeal, without it, the motion would have been groundless. The Medical Providers opted to join White Mountain Radiology's motion to dismiss that was limited to the consortium claims. During argument on the motion, each

party was asked if there was anything to add, and each said no. That was a strategy, not a deprivation of the opportunity to defend. The court erred by dismissing the complaint; moreover, the record is void of any objection to the substitution. Thus, the court erred by denying the motion to substitute.

### 2. The Superior Court Must Determine Whether It Would Cause Prejudice to Amend the Complaint to Add Martin's Children's Loss-of-Consortium Claims.

¶34 The motion to amend also sought to add Martin's children's claims for loss of consortium. When an injury to a parent causes "severe damage to the parent-child relationship[,] [t]he child may recover for the loss of the parent's love, affection, protection, support, services, companionship, care, and society." *Villareal*, 160 Ariz. at 481. The court erred because it based its dismissal on the erroneous belief that the children's consortium claims were extinguished. *See Hammett*, 2019 WL 5556953, at *3, ¶ 13. The Medical Providers assert that we should affirm the denial because the court acted within its discretion to deny the motion because the statute of limitations expired, or because the two-year delay caused prejudice. But the Medical Providers are incorrect concerning the statute of limitations, and the court did not make a ruling on prejudice. *See Broadband Dynamics, LLC v. SatCom Mktg., Inc.*, 244 Ariz. 282, 287, ¶ 14 (App. 2018) (declining to consider an issue because it was "not addressed by the superior court and the facts are not sufficiently developed to permit a proper legal analysis" on appeal).

¶35 The statute of limitations does not bar Martin's children's claims because the Medical Providers did not move for joinder, and each child is still under the age of eighteen. *Villareal*, 160 Ariz. at 481. On appeal, the Medical Providers argue:

> The children's claim was also arguably barred by the statute of limitations. *See Maes v. El Paso Orthopaedic Surgery Grp., P.A.*, 385 S.W.3d 694, 699 (Tex. App. 2012) (parental consortium claim was extinguished when the statute ran on injured father's claim; "Because a claim for loss of parental consortium is derivative in nature and owes its existence to the injured parent's claim, it is subject to the same defenses the injured parent's action would have been subject to.").

After citing to this Texas case, the Medical Providers then questioned the controlling Arizona Supreme Court case, *Villareal*, by claiming that it is unclear whether Arizona would allow the plaintiffs' minority to toll their

consortium claim under the statute of limitations. As the Medical Providers frame it, *Villareal* is ambiguous because it states that defendants may require joinder of the claims by appropriate motion to the superior court, but if joinder is not obtained, "the normal statute of limitations rules will apply." *Villareal,* 160 Ariz. at 481. The Medical Providers maintain that this statement in *Villareal* "is not only dicta, but makes little sense."

¶**36**　　　In *Villareal*, the court applied a new rule to allow a child to recover for loss of consortium when a parent is severely injured. *Villareal* states:

> Ordinarily, children's minority tolls the statute of limitations. A.R.S. § 12-502. Minor children suffering injury may wait to bring an action until after they become eighteen years old, and the applicable statute of limitations runs from their eighteenth birthday. Because a child's loss of consortium claim is derivative of the parent's personal injury claim, we hold that defendants may require joinder of the claims by appropriate motion to the trial court. This will avoid duplicate litigation and will allow settlement or finalization of all claims resulting from the defendant's conduct at the same time. If the defendant does not request joinder, or if joinder is not feasible, the normal statute of limitations rules will apply.

160 Ariz. at 481.

¶**37**　　　What the Medical Providers reference as "dicta," this court is required to follow as "law." *See Resolution Tr. Corp. v. Segel,* 173 Ariz. 42, 44 (App. 1992) (a statement from a court expressly declaring a guide for future conduct is considered authoritative and must be followed); *City of Phoenix v. Leroy's Liquors Inc.,* 177 Ariz. 375, 378 (App. 1993) (court of appeals is bound by decisions of the supreme court and may not "overrule, modify, or disregard them"). Nor do we find ambiguity in the statement "the normal statute of limitation rules will apply," particularly when the passage begins with the applicable rule that "children's minority tolls the statute of limitations." It would make no sense to require a defendant to move for joinder of the children or otherwise the *parent's* statute of limitation would apply. Understandably, a defendant does not want to solicit new plaintiffs. However, if a defendant does not *proactively move for joinder* of the injured party's minor children, or if joinder is not feasible, tolling applies, and a defendant risks defending an action years after the alleged injury.

**¶38**        The Medical Providers' opportunity to object to the substitution of the estate has passed. Upon remand, the court will enter the substitution. However, they did object to the motion to add the children, claiming it would cause prejudice. And, as they have pointed out, whether to grant a motion to amend is within the sound discretion of the superior court. *See Bishop v. State, Dep't of Corr.*, 172 Ariz. 472, 474 (App. 1992). Therefore, on remand, the superior court may either grant the motion to add the children as plaintiffs with their consortium claims, or, if the Medical Providers can establish prejudice sufficient to prevent the amendment in this case, the children may commence a new case—now, within two years of each child turning 18 under A.R.S. § 12-502, or anytime in between. In the alternative, if the Medical Providers do not want the children's statute of limitations to toll as *Villareal* dictates, they may move for joinder.

## CONCLUSION

**¶39**        We reverse the judgment and remand for further proceedings consistent with this opinion. Accordingly, upon compliance with Arizona Rule of Civil Appellate Procedure 21, we award Martin's widow costs as the successful party under A.R.S. § 12-341.



AMY M. WOOD • Clerk of the Court
FILED: AA