NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ERMA JOHNSON, *Plaintiff/Appellant,*

*v.*

STATE OF ARIZONA, et al., *Defendants/Appellees.*

No. 1 CA-CV 25-0271

FILED 01-28-2026

Appeal from the Superior Court in Maricopa County
No. CV2021-008186
The Honorable Scott A. Blaney, Judge

**AFFIRMED**

COUNSEL

Al Arpad Esquire, Phoenix
By Alexander R. Arpad
*Co-Counsel for Plaintiff/Appellant*

The People's Law Firm, PLC, Phoenix
By Stephen D. Benedetto
*Co-Counsel for Plaintiff/Appellant*

Fennemore Craig, P.C., Phoenix
By Douglas C. Northup, Emily A. Ward
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

---

Presiding Judge Daniel J. Kiley delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge Kent E. Cattani joined.

---

**K I L E Y**, Judge:

¶1        Erma Johnson ("Erma") sued the State of Arizona ("the State") and trooper George Cervantes ("Cervantes") for damages arising out of the shooting death of her son Dion Johnson ("Dion").[1] The superior court granted summary judgment in favor of the State and Cervantes (collectively, "Defendants") on all claims, and Erma appealed. We affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        Viewed in the requisite light most favorable to Erma as the party against whom summary judgment was entered, *see Doe v. Roman Cath. Church of Diocese of Phoenix*, 255 Ariz. 483, 486, ¶ 2 (App. 2023) (citation omitted), the record shows that Cervantes was on duty at about 5:30 a.m. on May 20, 2020, when he spotted a Toyota Prius parked in the "gore-point" (the triangular area where the on-ramp meets the freeway) of the Tatum Boulevard on-ramp to State Route 101 in Phoenix. Cervantes parked his motorcycle behind the Prius and approached it on the passenger side. Opening the passenger door, Cervantes saw the car's sole occupant, later identified as Dion, asleep in the driver's seat, with the keys in the ignition and the engine running. Cervantes saw an empty tequila bottle between the driver's seat and the center console, and noticed that the sleeping driver appeared to have urinated in his pants. Cervantes also saw a semiautomatic pistol on the passenger seat, which he removed from the car for his own safety. As he walked back to his motorcycle to secure the pistol in the saddlebag, he radioed for backup.

¶3        Cervantes then returned to the Prius, opened the passenger door, and tried to reach over to remove the keys from the ignition. Unable to do so, he walked around the car to the driver's side and opened the door. Seeing that Dion was now awake and had his hands on the steering wheel, Cervantes reached in and placed one handcuff around Dion's left wrist.

---

[1] Because they share the same last name, we respectfully refer to Dion Johnson and Erma Johnson by their first names for clarity.

Dion immediately reached, with his other hand, to the passenger seat where the pistol had been before Cervantes removed it.

¶4     Cervantes then tried to pull Dion out of the Prius, but Dion resisted. The two struggled, with Dion still in the driver's seat and Cervantes standing partly in the freeway traffic lane. A passing motorist, J.L., who saw the altercation and called 911 to report it, stated that she had "to swerve out of the lane" to avoid hitting Cervantes. Meanwhile, another motorist, J.G., stopped his car in the freeway lane behind Cervantes to block oncoming traffic from hitting him.

¶5     Trooper Michael Whitney, who heard Cervantes's call for backup, watched the altercation via cameras mounted near the on-ramp. He saw Cervantes struggling with Dion and also saw other motorists stopping nearby.

¶6     As Cervantes and Dion struggled, Dion suddenly pivoted in his seat and pulled his feet up to his chest as though preparing to kick Cervantes away from the car and further into the traffic lane. Fearing for his life, Cervantes drew his service pistol, pointed it at Dion, and commanded Dion to stop resisting.

¶7     Dion appeared to relax, and Cervantes began to holster his pistol. Suddenly, Dion grabbed Cervantes's vest with his left hand and pulled him toward the car while, with his right hand, he grabbed Cervantes's arm that was holding the pistol. Cervantes fired two shots. One missed; the other hit Dion in the abdomen. Less than 18 seconds passed between the time Cervantes attempted to place Dion under arrest and the shooting.

¶8     Dion continued to struggle, even after another officer arrived by motorcycle moments later. Together, Cervantes and the other officer removed Dion from the car and gained control of his arms long enough to place him in handcuffs. The other officer administered first aid until an ambulance arrived and took Dion to a nearby hospital, where he later died. Toxicology results showed that Dion had a blood alcohol concentration of .188.

¶9     In May 2021, Erma filed suit against the State and Cervantes, asserting a variety of claims. After discovery, Defendants moved for summary judgment on all claims, asserting, *inter alia*, that the claims lacked a basis in fact or law because (1) Cervantes was shielded from liability by the doctrine of qualified immunity and was justified in shooting Dion in any event, and (2) the State cannot, as a matter of law, be liable for its agent's

3

non-tortious conduct. The State supported its motion with evidence that included pages from the transcript of the depositions of Cervantes and J.G.

**¶10** In response, Erma admitted, or at least failed to controvert, most of the facts alleged by Defendants in support of their motion for summary judgment. She nonetheless asserted that Cervantes had "severe credibility issues," and therefore that a jury must be permitted to determine "whether to believe [his] self-serving version(s) of events." According to Erma, "self-serving statements of officers cannot be the basis of granting summary judgment."

**¶11** After further briefing and argument, the superior court issued a lengthy ruling granting Defendants' motion. In so ruling, the court noted that Erma failed to controvert Defendants' factual allegations with competent evidence and, "in many cases, fail[ed] to even deny" them. The uncontroverted evidence, the court determined, entitled Defendants to judgment as a matter of law.

**¶12** Erma timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶13** Erma challenges the grant of summary judgment on all of her claims, arguing that the superior court erred by drawing inferences in favor of Defendants and ignoring the controverting evidence she presented.

**¶14** Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). If the moving party makes a *prima facie* showing of its entitlement to summary judgment, the burden shifts to the non-moving party to "come forward with evidence establishing the existence of a genuine issue of material fact that must be resolved at trial." *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 115, ¶ 12 (App. 2008). Only disputes over facts that "might affect the outcome" of the case will "properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Everson v. Tucci*, 1 CA-CV 20-0202, 2020 WL 7039019 at *2, ¶ 14 (Ariz. App. Dec. 1, 2020) (mem. decision) ("Factual disputes do not preclude summary judgment if the disputed facts are not material."). We review a grant of summary judgment *de novo*, viewing the evidence and reasonable inferences therefrom in the light most favorable to the non-moving party. *Doe*, 255 Ariz. at 488, ¶ 18 (citation omitted).

I.      **Claims against Cervantes**

A.      **§ 1983 claim**

¶15         Erma asserted a civil rights claim against Cervantes under 42 U.S.C. § 1983, alleging that Cervantes "escalated a simple traffic encounter into an unreasonably dangerous situation" and then "used excessive and unreasonable force when he fatally shot Dion[,]" thereby violating the due process rights of both Dion and Erma.

¶16         The Fourteenth Amendment to the United States Constitution states in pertinent part that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const., amend. XIV, § 1. Section 1983 of the United States Code authorizes a private right of action against any person who, under color of law, deprives another of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "[A] parent has a constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of his or her child[.]" *Curnow ex rel. Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). The wrongful deprivation of that relationship by one acting under color of law may give rise to a claim under § 1983. *See A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 461 (9th Cir. 2013) (affirming jury verdict for plaintiff child of decedent on § 1983 claim based on deprivation of companionship in violation of Fourteenth Amendment).

¶17         A government official is entitled to qualified immunity from a § 1983 claim, and so cannot be liable unless the plaintiff shows that the official "(1) violated a federal statutory or constitutional right and (2) the unlawfulness of [the official's] conduct was clearly established at the time." *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (citation modified). To overcome the officer's qualified immunity in a § 1983 action arising out of a police shooting, the plaintiff "must show that the officer['s] conduct 'shocks the conscience.'" *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022) (citation omitted).

¶18         In granting summary judgment on Erma's § 1983 claim, the superior court held that "no reasonable juror could find that Trooper Cervantes' use of deadly force while struggling with Johnson" shocks the conscience, and therefore that Cervantes was entitled to qualified immunity. Erma challenges this ruling, arguing that she presented evidence from which a jury could conclude that Cervantes unnecessarily "escalate[d] the situation" when he attempted to singlehandedly arrest Dion by approaching the Prius on the driver's side — thereby placing himself in

harm's way in the freeway traffic lane — instead of waiting for backup to arrive. She further argues that the court erroneously failed to consider evidence undermining Cervantes's credibility, which, she maintains, would have permitted a reasonable jury to disbelieve his account of the relevant events.

**¶19** When deciding whether an officer's actions in a police shooting "shock the conscience," courts use one of two alternative tests. *Ochoa*, 26 F.4th at 1056. Under the first, known as the "deliberate-indifference" test, an officer loses the shield of qualified immunity if he acts with deliberate indifference to another's rights by disregarding "a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted). Under the second, known as the "purpose-to-harm" test, an officer loses the qualified immunity shield if he "acted with a purpose to harm the decedent for reasons unrelated to legitimate law enforcement objectives." *Ochoa*, 26 F.4th at 1056 (citation modified); *see also Ring v. City of Chandler*, CV-24-00630-PHX-SPL, 2025 WL 254549 at *6 (D. Ariz. Jan. 21, 2025) ("In urgent, emergency situations that necessitate fast action and involve competing public safety obligations, a plaintiff must show that an official acted with a 'purpose to harm' for reasons other than legitimate law enforcement objectives to meet the 'shocks the conscience' standard."). "Legitimate objectives" that will defeat a plaintiff's attempt to satisfy the purpose-to-harm test "include arrest, self-protection, and protection of the public." *Ochoa*, 26 F.4th at 1056 (citation modified). Conversely, illegitimate objectives may be found "when the officer had any ulterior motive for using force against the suspect," or "when an officer uses force against a clearly harmless or subdued suspect." *Id.* (citation modified).

**¶20** Whether the deliberate-indifference test or the purpose-to-harm test applies to a given situation depends on whether the officer had time to deliberate before taking the challenged action. *Id.* If so, the deliberate-indifference test applies. *Id.*; *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) ("As the very term 'deliberate indifference' implies, the standard is . . . employed only when actual deliberation is practical[.]"). "Deliberation is not possible if the officers encountered fast paced circumstances presenting competing public safety obligations." *Ochoa*, 26 F.4th at 1056 (citation modified). "[I]f the situation at issue escalated so quickly that the officer had to make a snap judgment[,]" the purpose-to-harm test applies. *Id.* (citation modified).

**¶21** In their statement of facts in support of their motion for summary judgment, Defendants alleged the facts set forth in Paragraphs 2 - 8 above. Erma admitted almost all of them. Indeed, she did not expressly

deny any of them. Notably, Erma admitted that Cervantes decided to arrest Dion without waiting for backup out of concern that Dion, who was clearly intoxicated, would attempt to drive away from the scene, thereby placing other motorists at risk. Erma further admitted that when Dion pivoted in the driver's seat and pulled his feet up to his chest as though preparing to kick Cervantes into the traffic lane, Cervantes feared for his life. She did not deny Defendants' allegation that Dion grabbed for Cervantes's service weapon.[2] And she expressly admitted that less than eighteen seconds passed between the time Cervantes opened the driver's side door of the Prius and the shooting. These facts alone establish that Cervantes attempted to arrest Dion for legitimate public safety reasons and that the encounter rapidly escalated when Dion's own actions placed the officer in fear for his own safety.

¶22 In response to some of Defendants' factual allegations, Erma affirmatively alleged that Dion was "approximately five feet and nine inches tall and weighed one hundred fifty-four pounds," an assertion whose significance she never tried to explain. She also affirmatively alleged that Cervantes could have avoided the safety risk posed by standing in the traffic lane had he attempted to arrest Dion from the passenger side of the Prius. She presented no evidence, however, that an officer can safely effect a roadside arrest of a person sitting in the driver's seat of a car by reaching through the vehicle from the passenger side.

¶23 Although she did not controvert the critical facts alleged by Defendants, Erma asserts that the superior court failed to consider other evidence calling Cervantes's credibility into question. Such evidence, she asserts, gives rise to "material factual disputes about what happened." Erma asserts, for example, that Cervantes's disciplinary history gives cause to doubt his veracity. But the only evidence of his disciplinary history that she presented during the summary judgment proceedings consisted of several unauthenticated pages from a report that Erma identifies as having been drafted by her expert witness, Spencer Fomby. These pages are not supported by affidavit, and so are insufficient, as a matter of law, to withstand summary judgment. *GM Dev. Corp. v. Cmty. Am. Mortg. Corp.*, 165 Ariz. 1, 5 (App. 1990) ("As a general rule, an unsworn and unproven

---

[2] Specifically, Defendants alleged that Dion grabbed Cervantes by the arm in which the officer was holding his service weapon and pulled his arm forward. Erma did not deny this allegation, but instead affirmatively (and non-responsively) alleged that Cervantes had already put handcuffs on one of Dion's wrists by that point.

assertion is not a fact that a trial court can consider in ruling on a motion for summary judgment.").

¶24 Erma asserts that Cervantes's purported "dishonesty and disciplinary history" were established by her allegations about them in the complaint, which, she contends, "were never even denied in [Defendants'] Answer." In support of her assertion, she notes that in responding to many of the allegations of her complaint, Defendants' answer often included the phrase "the document speaks for itself." As Erma correctly observes, Arizona Rule of Civil Procedure 8(c)(2)(A) does not allow a defendant to respond to an allegation by stating "the document speaks for itself." But Erma overlooks the fact that each paragraph of the answer that includes the phrase "the document speaks for itself" *also* includes an express denial of the corresponding allegation of Erma's complaint. We therefore reject Erma's suggestion that Defendants' answer failed to properly deny the complaint's allegations about Cervantes's credibility and disciplinary history. And because the complaint was not verified and its allegations were denied in the Defendants' answer, the complaint's allegations alone are insufficient to withstand summary judgment. *See Forty-Four Hundred East Broadway Co. v. 4400 East Broadway*, 139 Ariz. 498, 502 (App. 1983) ("A party resisting a motion for summary judgment cannot simply rely on his pleadings to meet his burden of coming forward with a showing that there is competent evidence so as to create an issue for trial.").

¶25 Erma also asserts that Cervantes made inconsistent statements that create a question of fact about the accuracy of his account of the relevant events. She notes, for instance, that Cervantes stated at his deposition that he was unable to see inside the Prius due to its tinted windows, but then later testified that he was able to see Dion moving in the Prius before he attempted to arrest him. But Erma did not dispute the facts set forth in Paragraphs 2-8 above, which are sufficient to establish applicability of the purpose-to-harm test. Purportedly inconsistent statements made by Cervantes on immaterial matters could not preclude summary judgment. *Orme School v. Reeves*, 166 Ariz. 301, 311 (1990) (noting that "dispute over irrelevant or immaterial facts" is not a basis for denial of summary judgment). And even if Erma had properly presented evidence of dishonest or unnecessarily aggressive conduct by Cervantes on other occasions, such evidence would not be sufficient to warrant denial of summary judgment based on the uncontroverted facts of this case. *See Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (noting that if the "defendant-official" in a 1983 case "has made a properly supported motion" for summary judgment based on qualified immunity, "the plaintiff may not respond simply with general attacks upon the defendant's credibility, but

rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the [improper] motive."); *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984) ("[D]iscredited testimony is not considered a sufficient basis for drawing a contrary conclusion.").

¶26        Finally, Erma asserts that Cervantes's deposition testimony is insufficient to support summary judgment because his testimony was "uncorroborated" and "self-serving." This assertion wholly lacks merit; testimony is not inadmissible merely because it is uncorroborated or self-serving. *See State v. Conn*, 137 Ariz. 152, 155 (App. 1982) (recognizing that defendant's out-of-court statements "were not inadmissible simply because they were self serving[,]" and an objection on that basis "alone would not be valid."); *see also Ivey v. Turning Point Homes and Dev., Inc.*, 1 CA-CV 23-0021, 2023 WL 7544844 at *3, ¶ 17 (Ariz. App. Nov. 14, 2023) (mem. decision) ("[T]he fact that a party's sworn statements are self-serving does not, without more, render those statements inadmissible" for summary judgment purposes). Absent competent evidence with which to undermine Cervantes's credibility, and lacking any facts to controvert his version of events, Erma's "bare assertion that the opposing party's uncontroverted evidence might be disbelieved is insufficient to resist judgment as a matter of law[.]" *Favorito v. Pannell*, 27 F.3d 716, 721 (1st Cir. 1994).

¶27        In support of her assertion that Cervantes' testimony should be rejected as "self-serving" despite her failure to submit admissible evidence to controvert it, Erma cites *Cruz v. City of Anaheim*, 765 F.3d 1076 (9th Cir. 2014). But *Cruz* holds merely a court in such circumstances must "carefully examine all the evidence in the record . . . to determine whether the officer's story is internally consistent and consistent with other known facts." 765 F.3d at 1079. Erma has not pointed to any such inconsistencies here, and our review of the record reveals none.

¶28        In sum, the uncontroverted evidence shows that the confrontation between Cervantes and Dion escalated quickly in the less-than-eighteen seconds that passed between the opening of the driver's side door and the shooting. The purpose-to-harm test therefore applies here, and Erma could not prevail on her § 1983 claim unless she showed that Cervantes "acted with a purpose to harm [Dion] for reasons unrelated to legitimate law enforcement objectives," *see Ochoa*, 26 F.4th at 1056; *see also Porter v. Osborn*, 546 F.3d 1131, 1139 (9th Cir. 2008) (holding that the purpose-to-harm standard applied to the "approximately five-minute altercation[,]" which "was obviously fast paced" and "was also quickly evolving and escalating[.]")

¶29        The uncontroverted facts establish that Cervantes had a legitimate objective — public safety — when he attempted to place the intoxicated Dion under arrest before he could drive away, and that Cervantes had a legitimate objective — self-protection — when he used deadly force during the altercation. Conversely, Erma presented no evidence that Cervantes acted from any illegitimate objective. Nothing in the record suggests, for example, that Cervantes acted as he did due to personal animus toward Dion or for another ulterior motive, or that Dion had already been subdued before Cervantes shot him. *See Garcia v. City of Phoenix*, 738 F.Supp.3d 1164, 1181-82 (D. Ariz. 2024) (holding that defendant officers were entitled to qualified immunity as a matter of law because plaintiffs failed to overcome purpose-to-harm standard; plaintiffs "presented no evidence" that officers' motive was "to bully" decedent or "to get even with him in some way," or that officers acted "for any reason other than to protect themselves and those around them."). Cervantes's "legitimate objectives" defeat Erma's efforts to overcome the purpose-to-harm test. We therefore agree with the superior court that no reasonable jury could find that Cervantes's actions shock the conscience. Cervantes's actions are, therefore, shielded by qualified immunity, and the court properly granted summary judgment on Erma's § 1983 claim.

## B.        Wrongful death based on assault and battery

¶30        Erma asserted a wrongful death claim against Defendants based on the intentional torts of assault and battery.

¶31        A spouse, child, parent, or estate of a decedent can bring a wrongful death claim for a "wrongful act, neglect or default" which caused the decedent's death and for which the decedent could have brought a claim if the decedent had lived. A.R.S. §§ 12-611, -612(A).

¶32        To establish an assault claim, the plaintiff must show that the defendant put the plaintiff in imminent apprehension of a harmful or offensive contact. Restatement (Second) of Torts, § 21 (1965). To establish a battery claim, a plaintiff must show that the defendant intentionally caused a harmful or offensive contact with the plaintiff to occur. *Johnson v. Pankratz*, 196 Ariz. 621, 623, ¶ 6 (App. 2000), *citing* Restatement (Second) of Torts, § 13 (1965).

¶33        Under A.R.S. § 13-410(C)(1), the use of deadly force by a police officer is justified if the officer "reasonably believes that it is necessary . . . [t]o defend himself or a third person from what [the officer] reasonably believes to be the use or imminent use of deadly physical force."

Civil liability may not be predicated on the use of deadly force that is justified under A.R.S. § 13-410(C)(1). *See* A.R.S. § 13-413.

¶34    In granting summary judgment on Erma's wrongful death claims against Cervantes, the court found, *inter alia*, that Cervantes had established a justification defense under A.R.S. §§ 13-410 and -413. Erma asserts that in so holding, the court improperly disregarded "conflicting testimony from various witnesses" and inconsistences in statements made by Cervantes "that created doubt about the facts of the altercation."

¶35    In their statement of facts supporting their motion for summary judgment, Defendants asserted that during the struggle, Dion "swiveled in the driver's seat to face Cervantes" and "brought his knees up to his chest" as though "preparing to kick Cervantes" into the traffic lane. At that point, Cervantes feared for his life. Cervantes pulled out his service weapon, and, holding it in his right hand, commanded Dion to stop. When Dion appeared to comply, Cervantes prepared to holster his weapon. Dion then grabbed Cervantes's vest with one hand and, with the other arm, grabbed Cervantes's right wrist. Cervantes feared Dion was trying to take his service pistol and would shoot him if given the opportunity. Cervantes fired two shots, one of which struck Dion.

¶36    Erma disputed none of these facts. In opposing summary judgment on her wrongful death claim based on assault and battery, Erma advances the same evidentiary arguments about purported doubts about Cervantes's credibility presenting a jury question, *see supra* ¶¶ 23-27. Because, as noted above, the facts upon which the superior court made its finding were uncontroverted, Erma's challenges to Cervantes's credibility fail to impact the analysis. The undisputed facts established that Cervantes shot Dion because Dion's attempts to take his service weapon during a physical altercation led him to fear for his life. Based on the uncontroverted facts, no reasonable jury could have reached any conclusion other than that Cervantes's use of deadly force was justified under A.R.S. § 13-410(C)(1). Therefore, the superior court correctly granted summary judgment on this claim. *See* A.R.S. § 13-413.

### C.    Wrongful death based on negligence and gross negligence

¶37    Erma also asserted wrongful death claims against Defendants based on negligence and gross negligence.

¶38    To establish a negligence claim, the plaintiff must show that the defendant owed a duty that he or she breached, a causal connection between the breach and the resulting injury, and damages. *See, e.g., Gipson*

*v. Kasey*, 214 Ariz. 141, 143-44, ¶ 11 (2007). To establish a gross negligence claim, the plaintiff "essentially must show wanton misconduct that is flagrant and evinces a lawless and destructive spirit." *Badia v. City of Casa Grande*, 195 Ariz. 349, 356, ¶ 27 (App. 1999) (citation modified).

**¶39**        In granting summary judgment on Erma's wrongful death claim against Cervantes based on negligence, the superior court held the claim precluded by our supreme court's decision in *Ryan v. Napier*, 245 Ariz. 54 (2018). As the court held, *Ryan v. Napier* precludes "a negligence claim" based "on a law enforcement officer's *intentional* acts — such as the intentional shooting of [Dion] in this case." Erma challenges this holding, insisting that *Ryan v. Napier* is distinguishable and therefore does not govern this case.

**¶40**        In *Ryan v. Napier*, the plaintiff asserted a negligence claim for bite injuries sustained when the officer who was trying to arrest him released a police dog because he refused to comply with commands to cease resisting arrest. The Arizona Supreme Court held the claim barred as a matter of law, stating that because "negligence and intent are mutually exclusive grounds for liability[,]" a plaintiff "cannot assert a negligence claim based solely on an officer's intentional use of physical force." 245 Ariz. at 57, 60, ¶¶ 1, 20. In *dicta*, the court stated that a plaintiff may properly "base a negligence claim on conduct by the officer that is independent of the intentional use of physical force." *Id.* at 57, ¶ 1. Relying on that *dicta*, Erma argues that *Ryan v. Napier* does not preclude liability here because, although the intentional act of shooting Dion cannot be brought as a negligence claim, Cervantes can be held liable in negligence for his actions in attempting to arrest Dion from the driver's side of the car instead of waiting for backup to arrive.

**¶41**        Although unpublished, our decision in *Torres v. Maricopa County*, No. 1 CA-CV 23-0768, 2024 WL 4442857 (Ariz. App. Oct. 8, 2024), is instructive. After being called to the scene of a domestic disturbance, police shot Torres after he lunged at them with a hammer. *Id.* at *1, ¶ 4. Torres's parents asserted wrongful death claims against the officers for battery and for negligence arising from the "pre-shooting conduct [that] unnecessarily escalated the situation[.]" *Id.* at *2, ¶ 6. The superior court found that *Ryan v. Napier* precluded the negligence claim because "the damages plaintiffs sought arose from [Torres's] death, which occurred as the direct result of the intentional act of shooting[.]" *Id.* at ¶ 7.

**¶42**        On appeal, the plaintiffs argued that their negligence claim was based solely on the deputies' "pre-shooting" conduct, which, they

contended, was "distinct" from their conduct in shooting Torres. *Id.* at ¶ 13. Specifically, the plaintiffs argued that the officers were negligent in the build-up to the shooting by failing to "defuse and de-escalate the situation[,]" "wait for backup[,]" or "control" Torres by "non-fatal means." *Id.* at *3, ¶ 14.

**¶43** The *Torres* court rejected the plaintiffs' argument, holding that *Ryan v. Napier* foreclosed their negligence claim because their allegations of the negligent build-up, even if true, were "not independent of the intentional use of force" because the build-up "led directly to that intentional use of force." *Id.* (internal citation omitted). The *Torres* court observed that Arizona's wrongful death statute "permits an action for wrongful death damages when the death is caused by an act that . . . would have entitled the decedent to maintain a personal injury action" if the decedent had lived. *Id.* at ¶ 18 (citing A.R.S. § 12-611). Because Torres, had he survived the shooting, could not have "pursued a personal injury action for the discrete alleged negligent acts preceding the deputies' intentional use of force[,]" his survivors could not pursue such a claim, either. *Id.* Because "[t]he deputies' pre-shooting conduct . . . did not constitute negligence separable from the immediately-ensuing intentional shooting[,]" the *Torres* court concluded, the only claim supported by the record was for "intentional battery[,]" and "the superior court properly granted summary judgment on the negligence claim." *Id.* at *4, ¶ 19.

**¶44** Likewise, in *Weber v. City of Kingman*, No. 1 CA-CV 21-0063, 2022 WL 1468246 at *1, ¶ 3 (Ariz. App. May 10, 2022), an officer called to the scene of a domestic disturbance shot and killed Weber, an armed suspect who refused to exit his trailer in response to police commands. Weber's wife asserted a wrongful death claim based on negligence, alleging that the officer's "pre-shooting conduct, separate and apart from the intentional act of shooting, gave rise to distinct negligence claims that contributed" to Weber's death. *Id.* at ¶ 4. The trial court granted summary judgment, holding that *Ryan v. Napier*, precluded the negligence claim. *Id.* at *2, ¶ 5. On appeal, this Court affirmed, holding that because "the basis for damages arose from [the officer's] intentional decision to shoot[,]" the plaintiff's challenge to the officer's purportedly "negligent acts and omissions . . . amount to questioning" the officer's "pre-tactical shooting decisions[.]" *Id.* at ¶ 10. "No semantic recasting of events," the *Weber* court stated, "can alter the fact that the shooting was the immediate cause of [Weber's] death and, consequently, the basis of [his wife's] claim." *Id.* at ¶ 9 (citation modified).

¶45 In this case, Erma advanced the same theory in this case as the plaintiffs in *Torres* and *Weber*, and on similar facts. Specifically, Erma asserted that Cervantes acted negligently "before he ever . . . drew his gun" by "deciding to step into an active freeway traffic lane to initiate a physical confrontation without waiting for backup." Erma, in other words, based her claim on purportedly negligent acts that culminated in an intentional shooting. But because the intentional shooting is the only harm that Dion sustained as a result of the purportedly negligent acts, the pre-shooting acts are not separately actionable on a negligence theory. Our prior analysis in *Torres* and *Weber* is squarely on point here. The superior court correctly determined that *Ryan v. Napier* precludes Erma's wrongful death claim based on a theory of negligence.

¶46 Although Erma alleged gross negligence as well as negligence in her complaint, she makes no argument that her gross negligence claim survives *Ryan v. Napier* if her ordinary negligence claim does not. We therefore affirm the superior court's ruling on all "negligence-based claims[,]" against Cervantes, including gross negligence.

## II.    Claims against the State

¶47 Erma brought claims against the State under the doctrine of *respondeat superior*, asserting that the State was vicariously liable for Cervantes's acts of battery and negligence. Because the superior court properly granted summary judgment on those claims, they cannot provide the basis for vicarious liability against the State. *Laurence v. Salt River Project Agric. Improvement & Power Dist.*, 255 Ariz. 95, 106, ¶ 44 (2023) ("Dismissing a tort claim against an employee because the claim lacks merit requires the court to also dismiss a claim against an employer under the doctrine of respondeat superior.").

¶48 Erma also claimed direct negligence by the State "in retention, training, supervision, and unreasonable failure to terminate Cervantes." However, the superior court correctly held that Erma could not maintain her claim for direct negligence because she failed to show Cervantes had committed a tort. *Mulhern v. City of Scottsdale*, 165 Ariz. 395, 398 (App. 1990) ("In order for the employer to be held liable for negligent hiring, retention or supervision, the employee must have committed a tort.").[3]

---

[3] Erma also appears to argue that *Ryan v. Napier* does not foreclose her negligence claims against the State for negligent hiring, training, and

**¶49** Due to Erma's failure to establish a viable tort claim against Cervantes, her claims against the State also fail. The superior court did not err in granting summary judgment for the State.

### III. Loss of consortium claims

**¶50** Erma brought loss of consortium claims against both Defendants. Loss of consortium is a derivative claim that requires a separate underlying tort claim. *Barnes v. Outlaw*, 192 Ariz. 283, 286, ¶ 8 (1998) ("[B]ecause loss of consortium is a derivative claim, all elements of the underlying claim must be proven before the claim can exist." (internal citation omitted)). Because none of Erma's tort claims survive summary judgment, the court correctly granted summary judgment on her loss of consortium claim, too. *Martin v. Staheli*, 248 Ariz. 87, 92, ¶ 17 (App. 2019) ("[T]he success of a loss-of-consortium claim is dependent on the success of another claim.").

### CONCLUSION

**¶51** We affirm. Defendants may recover costs on appeal upon compliance with ARCAP 21.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR

---

supervision. We do not address this argument because the superior court did not rely on *Ryan v. Napier* in granting summary judgment on her negligent training and supervision claim. Instead, the court held that Erma's failure to establish a tort by Cervantes extinguishes her negligent training and supervision claim against the State.